AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Black Apple iPhone<br>Seizure No. 2026250400034201-0004<br>("Target Device") | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.    3:26-mj-0049 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Dillon Whigham, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:    January 2, 2026

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Steve B. Chu, United States Magistrate Judge
*Printed name and title*

<u>**AFFIDAVIT**</u>

I, Special Agent Dillon Whigham, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Black Apple iPhone
>
> Seizure No. 2026250400034201-0004
>
> (**"Target Device"**)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Luis Manuel LANDIN Arias (henceforth, "LANDIN" or "Defendant") for importing approximately 8.94 kgs (19.71 lbs.)of fentanyl from Mexico into the United States.  The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.    I am Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since September 2024. I am currently assigned to the Contraband Smuggling Division within the HSI Office of the Deputy Special Agent in Charge in San Ysidro, California. I am a law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I am a graduate of the Federal Law Enforcement Training Center in

Glynco, Georgia.

4.      Prior to my tenure with HSI, I served as a military police officer in the United States Navy from 2014 to 2021, during which time I was a law enforcement specialist. From 2022 to 2024, I was a supervisory police officer in Honolulu, Hawaii. During my tenure as military police and a federal police officer, I investigated violations of military, federal, and local law, including, inter alia, narcotics trafficking investigations. I also served as a  Special Response Team Leader and as a crisis negotiator.

5.      During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry (POEs). My work on these investigations has resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for controlled substances violations.

6.      I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, the Otay Mesa Port of Entry, and the Tecate Port Of Entry.  With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently communicate with the

transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States. Additionally, I know it is common for drivers of smuggling vehicles to share their location via phone with a coordinator in the trafficking organization so that they may track their product in real-time.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.      tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8.      On December 3, 2025, at approximately 02:06 AM, Luis Manuel LANDIN Arias, a United States citizen, applied for entry into the United States from Mexico through the San Ysidro (SYS) Port of Entry (POE) in vehicle lane #20.  The defendant was the driver and sole occupant of a 2016 Chrysler 200 ("the vehicle") bearing California license plates. The vehicle had a notice of transfer pending; however, LANDIN was in possession of a signed motor vehicle title for the vehicle.

9.      A Customs and Border Protection Officer (CBPO) received two negative Customs declarations from LANDIN. LANDIN stated he was crossing the border to go to San Ysidro, California. The vehicle was referred for further inspection due to a computer-generated alert.

10.      Further inspection of the vehicle resulted in the discovery of eight packages concealed in bottles of "Super Tech" motor oil in the trunk of the vehicle. A Narcotics Detection Canine with a Canine Enforcement Team alerted to the jugs of motor oil in the trunk of the vehicle. The packages had a total approximate weight of 8.94 kgs (19.71 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of fentanyl.

11.      LANDIN was placed under arrest at approximately 04:25 AM.

12.      During a post-Miranda interview, LANDIN denied knowledge that the narcotics were in the vehicle. LANDIN stated that he was going to work in San Ysidro. LANDIN said no one else has access to his vehicle, that no one has ever asked him to cross anything into the US. LANDIN further asserted someone must have accessed his vehicle and put drugs in the trunk without his knowledge.

13.    LANDIN was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

14.    The **Target Device** was found and seized by a CBPO who was tasked to perform a secondary inspection of the vehicle and inventory all the property seized from the Defendant and his Vehicle.  The **Target Device** was found by the CBPO in LANDIN's front right pants pocket. During the interview, LANDIN was shown the **Target Device** and identified the **Target Device** as belonging to him. LANDIN provided written consent to search the phone and provided the PIN of 200421 to access the phone. During the interview, HSI SAs conducted a manual review of the phone **Target Device**. After the interview with LANDIN, a partial (logical) extraction of the data on the **Target Device** was completed.

15.    During the manual review of the **Target Device**, investigators found that LANDIN was sharing live location with "Jose" via WhatsApp number +52-664-783-9327 and had been sharing since 01:16 AM. A conversation on Facebook Messenger with "Roberto Montano Cuevas".[1] showed a message sent the night before (Tuesday, 12/2 at 6:02 PM) to LANDIN. The message said, "traete tres botes" (translated: bring three bottles).

16.    During the manual review of the **Target Device**, investigators also found seven calls to unsaved phone numbers with Huntington Park area codes placed two days before (Monday, December 1, 2025). Checks of law enforcement databases for the phone numbers showed all but one are--or have recently been--connected to drug trafficking investigations. During the interview, LANDIN said he had not traveled to the Los Angeles or Huntington Park areas since Saturday (November 29, 2025)[2].

[1] "Jose Roberto Montano Cuevas" was arrested at approximately 04:30 AM on December 3, 2025, northbound on the I-5 near San Clemente following a traffic stop. Montano Cuevas was found to be in possession of 6.65 kgs (14.66 lbs) of fentanyl concealed inside "Super Tech" oil jugs in the trunk. Montano Cuevas crossed into the US from Mexico at the SYS POE on December 3, 2025, at approximately 02:09 AM through vehicle lane 19. LANDIN crossed at approximately 02:06 AM through vehicle lane 20.
[2] Geolocation metadata connected to photos and videos captured by the Target Device on Monday show the device was in the vicinity of the 6300 block of Santa Fe Ave in Huntington Park on the afternoon of December 1, 2025.

17.     During the interview with LANDIN, he claimed to work at Walmart in San Ysidro.[3]. LANDIN said he had just moved to Tijuana from Salt Lake City, UT area approximately three weeks prior.[4] to his arrest and that he did not come with a lot of money (about $2,600 total). LANDIN said he bought the vehicle approximately two weeks before his arrest and drove mostly to and from work. The last reported sale of the vehicle (October 14, 2025) was to a Mexican car dealer; the vehicle's odometer read 185,000 miles.[5].

18.     Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.  In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the importation of illicit narcotics into the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

19.     Based upon my training and experience, it is not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Additionally, there is generally a recruitment and vetting period prior to a person beginning smuggling activities. Accordingly, I request permission to search the **Target Device** for data beginning on November 19, 2025, up to and including December 3, 2025.

---

[3] Investigators attempted employment verification with all McDonalds in the San Ysidro area. LANDIN did not work at McDonalds.

[4] LANDIN began his 2025 border crossings on November 23, 2025.

[5] Pictures and videos on the Target Device captured on November 24, 2025, at 2:17 a.m. showed LANDIN crossing through the SYS POE in the vehicle; the mileage was 109350. On the date of LANDIN's arrest, the vehicle's mileage was 110203. In the span of eight days, the vehicle accumulated 853 miles.

**METHODOLOGY**

20.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21.    Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23.    Law enforcement has previously attempted to obtain the evidence sought by this warrant but the download at the Port of Entry was only partially successful.

### CONCLUSION

24.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Dillon Whigham
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 2nd day of January, 2026.

Honorable Steve B. Chu
United States Magistrate Judge

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

      Black Apple iPhone
      Seizure No. 2026250400034201-0004
      (**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 19, 2025, up to and including December 3, 2025:

a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, or some other federally controlled substance, from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.